**ORAL ARGUMENT NOT YET SCHEDULED**

_____

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

_____

| | | |
|---|---|---|
| SKY TELEVISION, L.L.C., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 13-1270 |
| | ) | |
| FEDERAL COMMUNICATIONS COMMISSION and UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

_____

**BRIEF FOR SKY TELEVISION, L.L.C.**

Meredith S. Senter, Jr.
S. Jenell Trigg
F. Scott Pippin
LERMAN SENTER PLLC
2000 K Street, NW, Suite 600
Washington, DC  20006
(202) 429-8970

February 28, 2014        *Attorneys for Petitioner*

## CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES

The undersigned attorney of record, in accordance with D.C. Cir.

Rule 28(a)(1), hereby certifies as follows:

**A.    Parties and Amici**

The parties in this Court are:

*Petitioner*

Sky Television, L.L.C.

*Respondents*

Federal Communications Commission
United States of America

This court has not granted any party leave to intervene or to

participate as amicus curiae.

As set forth in Attachment A to the ruling on review, the following

parties participated in the FCC proceeding below:

American Cable Association
Arkansas Broadcasters Association and Christian Broadcasting
 System, LTD.
AT&T Services, Inc.
Clearwire Corporation
Competitive Carriers Association
Critical Messaging Association
CTIA – The Wireless Association®
DIRECTV, LLC
Echostar Satellite Operating Company and Hughes Network Systems,
 LLC and DISH Network L.L.C.
Fireweed Communications LLC and Jeremy Lansman
Google Fiber, Inc.

i

Independent Telephone & Telecommunications Alliance
Intelsat License LLC
International Carrier Coalition
P. Randall Knowles
Bennett Z. Kobb
Minority Media and Telecommunications Council
National Association of Broadcasters
National Cable & Telecommunications Association
North American Submarine Cable Association
Sarkes Tarzian, Inc. and Sky Television, L.L.C.
Satellite Industry Association
SES Americom, Inc., Inmarsat, Inc., and Telesat Canada
Telesat Canada
Telstra Incorporated and Australia-Japan Cable (Guam) Limited
United States Telecom Association
Verizon and Verizon Wireless
Martin D. Wade

## B.    Ruling Under Review

The ruling under review is the Federal Communications

Commission's Report and Order in *Assessment and Collection of Regulatory*

*Fees for Fiscal Year 2013, Procedures for Assessment and Collection of*

*Regulatory Fees, Assessment and Collection of Regulatory Fees for Fiscal*

*Year 2008*, 28 FCC Rcd 12351 (2013), 78 Fed. Reg. 52,433 (Aug. 23, 2013)

(JA __).

**C.     Related Cases**

There are no related cases on review in this Court or any other court.

Respectfully submitted,


/s/ Meredith S. Senter Jr.

Meredith S. Senter, Jr.
LERMAN SENTER PLLC
2000 K Street, NW, Suite 600
Washington, DC  20006
(202) 429-8970

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and D.C. Cir. Rule 26.1, Sky Television, L.L.C. submits the following corporate disclosure statement:

Sky Television, L.L.C. is a North Carolina limited liability company formed for the purpose of owning and operating broadcast television station WSKY-TV, Manteo, North Carolina.  It is not publicly traded.  It has no parent company.  None of its members are public companies.  All of its members are individuals, except for the following:  BICO; FUBAR, LLC; Insurance Leasing Associates; Iroquois Farms; Lee Automotive Services, LLC; and Woodard & Daughters, Inc.

## <u>STATEMENT REGARDING DEFERRED APPENDIX</u>

Petitioner and Respondents have agreed to use a deferred joint

appendix.

## **TABLE OF CONTENTS**

CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES .... i

CORPORATE DISCLOSURE STATEMENT ............................................... iv

STATEMENT REGARDING DEFERRED APPENDIX ............................ v

TABLE OF AUTHORITIES ........................................................................ vii

GLOSSARY ................................................................................................ xii

JURISDICTIONAL STATEMENT ............................................................. 1

STATEMENT OF ISSUES ........................................................................... 1

PERTINENT STATUTES.............................................................................. 2

PRELIMINARY STATEMENT ..................................................................... 2

STATEMENT OF FACTS ............................................................................. 3

SUMMARY OF ARGUMENT ..................................................................... 13

STANDING .................................................................................................... 14

ARGUMENT .................................................................................................. 14

I.      THE COURT HAS JURISDICTION TO DECIDE THIS CASE. .... 14

II.     THE FCC'S DECISION TO DELAY WAS UNREASONABLE,
        ARBITRARY AND CAPRICIOUS. .................................................. 15

III.    THE COMMISSION HAS UNREASONABLY DELAYED THE
        ELIMINATION OF THE DISTINCTION BETWEEN THE FEES
        CHARGED TO VHF AND UHF STATIONS. ................................. 25

CONCLUSION ............................................................................................. 32

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM – STATUTES, RULES AND REGULATIONS

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

## CASES

*Capital Cities Commc'ns, Inc. v. FCC*, 554 F.2d 1135 (D.C. Cir. 1976)............................................................................ 31

*Comsat Corp. v. FCC*, 114 F.3d 223 (D.C. Cir. 1997)................................ 15

*Comsat Corp. v. FCC*, 283 F.3d 344 (D.C. Cir. 2002)................................ 15

*FCC v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009) ........................ 15

*In re Core Commc'ns Inc.*, 531 F.3d 849 (D.C. Cir. 2008)......................... 30

*MCI Telecomm. Corp. v. FCC*, 627 F.2d 322 (D.C. Cir. 1980).................. 29

*Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983) .................................................... 16

*PanAmSat Corp. v. FCC*, 198 F.3d 890 (D.C. Cir. 1999)........................... 15

*Telecomm. Research & Action Ctr. v. FCC*, 750 F.2d 70 (D.C. Cir. 1984)............................................................................. 28, 29

*Authorities upon which we chiefly rely are marked with asterisks.

## FCC CASES

*Amendment of Section 73.3555(e) of the Commission's Rules, National Television Multiple Ownership Rule*, Notice of Proposed Rulemaking, 28 FCC Rcd 14324 (2013)..................................... 8

*Assessment and Collection of Regulatory Fees for Fiscal Year 1995*, Report and Order, 10 FCC Rcd 13512 (1995)................................ 20

*Assessment and Collection of Regulatory Fees for Fiscal Year 1996*, Report and Order, 11 FCC Rcd 18774 (1996)................................ 20

*Assessment and Collection of Regulatory Fees for Fiscal Year 1997*, Report and Order, 12 FCC Rcd 17161 (1997)......................... 18, 21

*Assessment and Collection of Regulatory Fees for Fiscal Year 1998*, Report and Order, 13 FCC Rcd 19820 (1998)................................ 21

*Assessment and Collection of Regulatory Fees for Fiscal Year 1999*, Report and Order, 14 FCC Rcd 9868 (1999)................................. 21

*Assessment and Collection of Regulatory Fees for Fiscal Year 2001*, Report and Order, 16 FCC Rcd 13525 (2001)................................ 21

*Assessment and Collection of Regulatory Fees for Fiscal Year 2003*, Report and Order, 18 FCC Rcd 15985 (2003)......................... 21, 22

*Assessment and Collection of Regulatory Fees for Fiscal Year 2004*, Report and Order, 19 FCC Rcd 11662 (2004)......................... 18, 20

*Assessment and Collection of Regulatory Fees for Fiscal Year 2005*, Report and Order and Order on Reconsideration, 20 FCC Rcd 12259 (2005) ............................................................. 26

*Assessment and Collection of Regulatory Fees for Fiscal Year 2007*, Report and Order and Further Notice of Proposed Rulemaking, 22 FCC Rcd 15712 (2007)................................... 25

*Assessment and Collection of Regulatory Fees for Fiscal Year 2008*, Report and Order and Further Notice of Proposed Rulemaking, 24 FCC Rcd 6388 (2008)................................... 26

*Assessment and Collection of Regulatory Fees for Fiscal Year 2009*, Notice of Proposed Rulemaking and Order, 24 FCC Rcd 5966 (2009) ..................................................................... 8, 26

*Assessment and Collection of Regulatory Fees for Fiscal Year 2010*, Report and Order, 25 FCC Rcd 9278 (2010) ........ 7, 9, 10, 22, 26, 27

*Assessment and Collection of Regulatory Fees for Fiscal Year 2011*, Notice of Proposed Rulemaking, 26 FCC Rcd 7068 (2011) ........................................................................... 10, 27

*Assessment and Collection of Regulatory Fees for Fiscal Year 2011*, Report and Order, 26 FCC Rcd 10812 (2011) .................... 10, 22, 27

*Assessment and Collection of Regulatory Fees for Fiscal Year 2012*, Notice of Proposed Rulemaking, 27 FCC Rcd 5539 (2012) ..................................................................... 10, 11, 27

*Assessment and Collection of Regulatory Fees for Fiscal Year 2012*, Report and Order, 27 FCC Rcd 8390 (2012) ..................... 11, 24, 27

*Assessment and Collection of Regulatory Fees for Fiscal Year 2013*, Notice of Proposed Rulemaking and Further Notice of Proposed Rulemaking, 28 FCC Rcd 7790, 7805 (¶ 36) (2013) ("*FY 2013 NPRM*") ........................................................ 6, 13, 16

*Assessment and Collection of Regulatory Fees for Fiscal Year 2013, Procedures for Assessment and Collection of Regulatory Fees, Assessment and Collection of Regulatory Fees for Fiscal Year 2008*, 28 FCC Rcd 12351 (2013) ("*FY 2013 Order*") ..................................... 1, 4, 5, 7, 11, 16, 18, 19, 20, 22

*Procedures for Assessment and Collection of Regulatory Fees*, Notice of Proposed Rulemaking, 27 FCC Rcd 8458 (2012) .................... 11

*Second Periodic Review of the Commission's Rules and Policies Affecting the Conversion to Digital Television*, 19 FCC Rcd 18279 (2004) ............................................................... 7

## STATUTES

5 U.S.C. § 553(d) ............................................................................. 19

5 U.S.C. § 706 ................................................................................. 14

5 U.S.C. § 706(1) ...................................................................... 25, 28

28 U.S.C. § 2342(1) ........................................................................... 1

47 U.S.C. § 159 ................................................................................. 3

47 U.S.C. § 159(a)(1) ......................................................................... 3

47 U.S.C. § 159(b) ............................................................................. 3

47 U.S.C § 159(b)(1)(A) .................................................................... 19

47 U.S.C. § 159(b)(2) ............................................................. 14, 17, 18

47 U.S.C. § 159(b)(2)(A) .................................................................. 18

47 U.S.C. § 159(b)(3) ............................................................. 14, 17, 20

47 U.S.C. § 159(b)(4)(A) .................................................................. 17

47 U.S.C. § 159(b)(4)(B) .................................................................. 17

*47 U.S.C. § 159(d) .......................................................................... 24

47 U.S.C. § 159(g) ............................................................................. 3

47 U.S.C. § 402(a) ............................................................................. 1

*Consolidated Appropriations Act, 2012, Pub. L. No. 112-74,
  125 Stat. 786 (2011) ..................................................................... 23

Middle Class Tax Relief and Job Creation Act of 2012, Pub. L.
  No. 112-96, § 6403(g)(1)(B), 126 Stat. 156 ..................................... 7

## REGULATIONS

47 C.F.R. § 1.1152 ........................................................................... 3

47 C.F.R. § 1.1153 ........................................................................ 3, 4

47 C.F.R. § 1.1154 ........................................................................... 3

47 C.F.R. § 1.1155 ........................................................................... 3

47 C.F.R. § 1.1156 ........................................................................... 3

## MISCELLANEOUS

GAO, *Federal Communications Commission Regulatory Fee
    Process Needs to Be Updated*, GAO 12-686
    (Washington, D.C.: Aug. 2012) ("*GAO Report*") ................... 11, 12, 23, 24

# GLOSSARY

| | |
|---|---|
| **Communications Act** | Communications Act of 1934, as amended, 47 U.S.C. § 151 et. seq. |
| **FCC** | Federal Communications Commission |
| **FY** | fiscal year |
| ***FY 2013 NPRM*** | FCC Notice of Proposed Rulemaking released on May 22, 2013 inviting comment on proposals to revise its allocation of regulatory fees assessed for digital UHF stations and VHF stations. |
| ***FY 2013 Order*** | FCC order released on August 23, 2013 formally consolidating UHF and VHF television stations into one regulatory fee category. |
| **GAO** | Government Accountability Office |
| **JA** | Joint Appendix |
| **Section 9** | Section 9 of the Communications Act of 1934, as amended, 47 U.S.C. § 159 |
| **Sky** | Sky Television, L.L.C. |
| **UHF channels** | Television stations that operate on Broadcast television channels 14-51 |
| **VHF channels** | Television stations that operate on Broadcast television channels 2-13 |

## JURISDICTIONAL STATEMENT

This Court has jurisdiction over Petitioner's challenge to the Federal Communications Commission's Report and Order in *Assessment and Collection of Regulatory Fees for Fiscal Year 2013, Procedures for Assessment and Collection of Regulatory Fees, Assessment and Collection of Regulatory Fees for Fiscal Year 2008*, 28 FCC Rcd 12351 (2013), 78 Fed. Reg. 52,433 (Aug. 23, 2013) ("*FY 2013 Order*") (JA __,__), under 47 U.S.C. § 402(a) and 28 U.S.C. § 2342(1), because the *FY 2013 Order* is final, and Petitioner timely filed a petition for review.

## STATEMENT OF ISSUES

1.      Whether the Federal Communications Commission ("FCC") arbitrarily and capriciously delayed by one year the effective date of its decision to henceforth charge television stations operating on VHF channels (channels 2-13) the same (lower) annual regulatory fees that it charges to television stations operating on UHF channels (channels 14 and above)?

2.      In light of the fact that the conversion of television to digital in 2009 made VHF channels less valuable than UHF channels, whether the FCC has unreasonably delayed its decision to charge television stations operating on VHF channels the same annual regulatory fees that it charges television stations operating on UHF channels?

## PERTINENT STATUTES

Pertinent statues are contained in the addendum.

## PRELIMINARY STATEMENT

This petition challenges the FCC's decision to delay by one year its implementation of a change to the annual regulatory fees that it collects from television stations.  Historically, the FCC has charged higher fees to television stations that operate on channels 2-13 ("VHF channels") than to stations that operate on channels 14-51 ("UHF channels"), because VHF channels were at one time technically superior to UHF channels.  When broadcast television converted to digital technology in 2009, UHF channels became more valuable than VHF channels.

Following the digital conversion, however, the FCC continued to assess VHF channels higher regulatory fees than UHF channels, notwithstanding that the reason for charging VHF channels a higher fee no longer existed.  Since 2010, Petitioner Sky Television, L.L.C. ("Sky") has urged the FCC to correct this anomaly.  But year after year, the FCC did nothing, even while acknowledging the irrationality of the fee disparity and promising to correct it soon.  In the meantime, the FCC continued to require VHF stations, including Sky's, to pay higher fees.

2

In the *FY 2013 Order*, the FCC finally eliminated the disparity.  But rather than making the change effective immediately, as Sky had requested, the FCC delayed implementation by one year.  As a result, for 2013, the FCC charged Sky a regulatory fee for its less valuable VHF channel that was almost double the fee charged to stations operating on more valuable UHF channels in the same market.

## STATEMENT OF FACTS

*FY 2013 Order on Review*.  This case is about the annual regulatory fees that the FCC charged broadcast television stations for the 2013 fiscal year ("FY 2013") under Section 9 of the Communications Act of 1934, as amended, 47 U.S.C. § 159 ("Communications Act").  Section 9 requires the Commission to assess and collect annual regulatory fees.  47 U.S.C. § 159(a)(1).  Congress established the initial regulatory fee schedule in 1993. *See* 47 U.S.C. § 159(g).  The statute requires the Commission to adjust the fees annually based on certain criteria.  47 U.S.C. § 159(b).  The Commission has implemented this requirement by annually revising a Schedule of Regulatory Fees set forth at 47 C.F.R. §§ 1.1152-56.  For FY 2013, as it has done historically, the FCC based the amount of the fee charged to a television station on two factors:  the size of the station's

3

market and whether the station operates on a VHF or UHF television

channel.  *See* 47 C.F.R. § 1.1153.

This case concerns the second factor – whether a station operates on a

VHF or UHF channel.  In the *FY 2013 Order*, the FCC noted that

"[h]istorically, analog VHF channels (channels 1-13) were coveted for their

greater prestige and larger audience, and thus the regulatory fees assessed on

VHF stations were higher than the regulatory fees assessed for UHF

(channels 14 and above) stations in the same market area.  After the digital

conversion [which occurred in 2009], it became evident that VHF channels

were less desirable than digital UHF channels . . ."  *FY 2013 Order* at

12361-62 (¶ 30) (JA __).  As a consequence, the FCC determined that it

should no longer differentiate between VHF and UHF channels for purposes

of fee collections.  *Id.*

The FCC did not make this change effective for FY 2013.  Instead, it

decided to delay implementation for one year.  The FCC's entire discussion

of the reason for the delay is set forth in the following paragraph:

> Sky Television also request[s] that the Commission implement
> this proposal in FY 2013.  With respect to this request, we note
> that section 9(b)(3) directs the Commission to add, delete, or
> reclassify services in the fee schedule to reflect additions,
> deletions, or changes in the nature of its services "as a
> consequence of Commission rulemaking proceedings or
> changes in law."  Combining UHF and VHF full-service
> television stations into one fee category constitutes a

4

> reclassification of services in the regulatory fee schedule as
> defined in section 9(b)(3) of the Act, and pursuant to section
> 9(b)(4)(B) must be submitted to Congress at least 90 days
> before it becomes effective.  The Commission will not have
> sufficient time to implement this change before September 30,
> 2013 and therefore we will implement this change in FY 2014.

*Id*. at 12362 (¶ 31) (footnote omitted) (JA __).

   ***Effect on Sky***.  During FY 2013, Sky operated a television station on

channel 9, a VHF channel, in the Norfolk-Portsmouth-Newport News,

Virginia market, which was then the 44th largest market in the country.

Comments of Sarkes Tarzian, Inc. and Sky Television, L.L.C. in MD Docket

Nos. 13-140, 12-201 and 08-65 at 2-3 (filed June 19, 2013) ("*Sky 2013*

*Comments*") (JA __ - __).  As a consequence of the FCC's decision in the

*FY 2013 Order*, Sky was assessed a regulatory fee of $42,775 for FY 2013.

Stations operating on UHF channels in the same market were assessed

$23,550.  Stations operating on UHF channels in the top 10 markets were

assessed $38,000.  *FY 2013 Order* at 12373, Attachment B (JA __).  Thus,

in FY 2013 the Commission charged Sky, which operates in the 44th largest

market, more than it charged most stations in New York City, Los Angeles

and other top 10 markets.

   ***The Underlying NPRM and Sky's Comments***.  In the underlying

notice of proposed rulemaking, the FCC asked for comments on the proposal

to eliminate the disparity in the amount charged to VHF and UHF stations.

*See Assessment and Collection of Regulatory Fees for Fiscal Year 2013*,

Notice of Proposed Rulemaking and Further Notice of Proposed

Rulemaking, 28 FCC Rcd 7790, 7805 (¶ 36) (2013) ("*FY 2013 NPRM*")

(JA __, __).  The Commission noted that Sky had proposed this change in

2010 and again in February 2013.  *See id.* at 7805 (¶ 35) n.69 (2013) (JA __,

__).

Without any explanation, the FCC stated that "[t]his proposal, if

adopted, w[ould] be implemented in FY 2014." *Id*. at 7805 (¶ 36) (JA __).

The FCC did not give any reason for, and it did not ask for comments on its

decision to delay implementation.  *Id*.  Nevertheless, Sky filed comments

urging the Commission to make the change effective for FY 2013, noting

that the Commission had offered no justification for delaying the change.

*See Sky 2013 Comments* (JA __).

**Historical Basis for VHF/UHF Disparity**.  VHF channels are

channels 2-13.  UHF channels are channels 14 and above.[1]  As the

---

[1]  The channel on which a television station operates or broadcasts should
not be confused with the station's "virtual channel," which is the channel
that an over-the-air viewer selects.  For example, WRC-TV, the NBC
affiliate in Washington, D.C., brands itself as "Channel 4," which is the
channel that a viewer selects to tune to the station, but WRC-TV actually
broadcasts on Channel 48, a UHF channel. *See WRC-TV*, Station Profiles,
https://stations.fcc.gov/station-profile/wrc-tv (last visited Feb. 28, 2014).
Thus, many stations that formerly operated on VHF channels, continue to be

Commission explained in the *FY 2013 Order*, "[h]istorically, analog VHF channels (channels 1-13) were coveted for their greater prestige and larger audience, and thus the regulatory fees assessed on VHF stations were higher than regulatory fees assessed for UHF (channels 14 and above) stations in the same market area." *FY 2013 Order* at 12361-62 (¶ 30) (JA __).

   ***Conversion to Digital.***  The Commission has known for years that the conversion to digital would have an adverse effect on VHF channels.[2] Congress has also recognized the inferiority of digital VHF channels.[3] Indeed, digital VHF channels are so inferior to digital UHF channels that a significant number of stations elected to operate on UHF channels rather than VHF channels as part of the digital conversion process.[4]

---

"found" on those channels, even though they in fact broadcast on UHF channels.

[2]  *See*, *e.g.*, *Second Periodic Review of the Commission's Rules and Policies Affecting the Conversion to Digital Television*, 19 FCC Rcd 18279, 18306 (¶ 63) (2004) (low VHF channels (channels 2-6) are so inferior that the FCC gave stations initially assigned a low VHF digital channel the right to participate in a special round in the permanent channel election process).

[3]  *See* Middle Class Tax Relief and Job Creation Act of 2012, Pub. L. No. 112-96, § 6403(g)(1)(B), 126 Stat. 156 (which directs the Commission to conduct a spectrum auction that will require many television stations to move to different channels, and expressly prohibits the Commission from involuntarily moving any UHF television broadcaster to the less-desirable VHF band).

[4]  *Assessment and Collection of Regulatory Fees for Fiscal Year 2010*, Report and Order, 25 FCC Rcd 9278, 9285 (¶ 19) (2010); *see also*

***Prior Proceedings***.  Full-power television stations completed the conversion from analog to digital on June 12, 2009.  Prior to FY 2010, stations that had converted to digital were not required to pay regulatory fees.  Only analog stations paid regulatory fees.  In 2009, the Commission announced that it would start collecting fees from digital TV stations in FY 2010.  *Assessment and Collection of Regulatory Fees for Fiscal Year 2009*, Notice of Proposed Rulemaking and Order, 24 FCC Rcd 5966, 5970 (¶ 11) (2009).

In 2010, Sky filed comments in response to the Commission's notice of proposed rulemaking for FY 2010 regulatory fees, which for the first time would apply to digital stations.  Sky noted that the Commission had previously indicated that it would create a new regulatory fee category for digital television stations, but that the Commission's proposed schedule of regulatory fees for FY 2010 did not contain such a category and instead retained the historical and outdated distinction between stations operating on VHF and UHF channels.  Sky argued that it made no sense to retain that

---

*Amendment of Section 73.3555(e) of the Commission's Rules, National Television Multiple Ownership Rule*, Notice of Proposed Rulemaking, 28 FCC Rcd 14324, 14324 (¶ 1) (2013) ("While UHF channels were technically inferior to VHF channels for purposes of transmitting analog television signals, experience since the [digital] transition suggests that, far from being inferior, they may actually be superior to VHF when it comes to the transmission of digital television signals.").

distinction, because in the digital era, UHF channels were demonstrably preferred over VHF.  Sky identified prior Commission decisions that recognized the inferiority of VHF digital channels.  Accordingly, Sky urged the Commission to create a separate regulatory fee category for full service digital television stations and to eliminate the anachronistic distinction between VHF and UHF stations.  *See* Comments of VHF Digital Stations in MD Docket No. 10-87 (filed May 4, 2010) ("*VHF Digital Stations Comments*") (JA __).

The Commission declined.  It acknowledged that a significant number of stations had changed from VHF to UHF channels during the digital transition, that as a result the fees allocated among the remaining VHF stations were disproportionately high, and that "this potential fee escalation underscores the need for more fundamental, long term reform of our regulatory fee process."  *Assessment and Collection of Regulatory Fees for Fiscal Year 2010*, Report and Order, 25 FCC Rcd 9278, 9285 (¶ 19) (2010).  But instead of eliminating the distinction between VHF and UHF channels, the Commission shifted costs to the UHF category in order to reduce the differential between the amounts paid by VHF and UHF stations.[5]  In doing

---

[5] Sky had also pointed out that while the initial schedule of regulatory fees adopted by Congress in 1993 provided for VHF stations to pay about 125% of the amount paid by UHF stations, the Commission had allowed that

so, the Commission stated that it was using "the shift … to move toward a combined fee category."  *Id*. at 9286 (¶ 20).

In the 2011 regulatory fee proceedings, the Commission incorrectly and inexplicably stated that it had "already acted on … the conversion of UHF and VHF Television stations from analog to digital television." *Assessment and Collection of Regulatory Fees for Fiscal Year 2011*, Notice of Proposed Rulemaking, 26 FCC Rcd 7068, 7076 (¶ 22) (2011); *Assessment and Collection of Regulatory Fees for Fiscal Year 2011*, Report and Order, 26 FCC Rcd 10812, 10822-23 (¶ 28) (2011).  But it also promised to initiate a further proceeding by the end of 2011.  *See Assessment and Collection of Regulatory Fees for Fiscal Year 2011,* 26 FCC Rcd at 7076 (¶ 22).  It did not do so.

In May 2012, the Commission noted that "[s]ince 1994 when the first regulatory fees were collected, the communications industry has undergone a rapid transformation.  At the same time, the current method for assessing regulatory fees has changed only slightly since its inception in 1994." *Assessment and Collection of Regulatory Fees for Fiscal Year 2012*, Notice of Proposed Rulemaking, 27 FCC Rcd 5539, 5540 (¶ 3) (2012).  The

differential to expand over time, and for FY 2010 the Commission had proposed without justification a 244-308% differential, depending on market size.  *See VHF Digital Stations Comments* at 3 n.1 (JA __).

10

Commission promised to initiate two separate rulemaking proceedings in 2012, in addition to a proceeding to establish the fees for FY 2012, and to reach a decision on all the issues raised "in sufficient time to allow for their implementation in FY 2013." *Id.* at 5541 (¶ 4); *see also Assessment and Collection of Regulatory Fees for Fiscal Year 2012*, Report and Order, 27 FCC Rcd 8390, 8391 n.5 (2012) ("We expect to implement any changes that result from this rulemaking in FY 2013").  The FCC did not meet its self-imposed deadline.[6]

In August 2012, the Government Accountability Office (the "GAO") released a report entitled *Federal Communications Commission Regulatory Fee Process Needs to Be Updated*. GAO 12-686 (Washington, D.C.: Aug. 2012), *available at* http://www.gao.gov/products/GAO-12-686 ("*GAO Report*") (JA __).  The GAO found that the FCC "assesses regulatory fees among industry sectors and fee categories based on obsolete data, with limited transparency. . . .  As a result of FCC's use of obsolete data in assessing regulatory fees, companies in some fee categories may be

---

[6]  The Commission also initiated only one of these proceedings in 2012. *Procedures for Assessment and Collection of Regulatory Fees*, Notice of Proposed Rulemaking, 27 FCC Rcd 8458 (2012).  This proceeding included both a new docket, MD Docket No. 12-201, and a docket that the Commission had initiated in 2008, MD Docket No. 08-65.  The *FY 2013 Order* references these two dockets, as well as the docket initiated by the *FY 2013 NPRM*. *See FY 2013 Order* at 12353-54 (¶¶ 7-9) .

subsidizing companies in others." *Id.* at Summary (JA __).  The GAO noted

that the number of television stations operating on VHF channels had

declined by 48% from FY 1998 to FY 2011.  *Id.* at 12 (JA __ - __).  It

further observed that:

> [O]fficials at the National Association of Broadcasting stated
> that the payment of regulatory fees is a bigger issue for small
> stations.  These officials stated that because consumers do not
> pay directly for broadcast radio or television, broadcasting
> entities cannot pass regulatory fees on to consumers but must
> incorporate the fee payment into operating costs to be paid with
> general operating revenue.  The National Association of
> Broadcasters and one broadcast company we spoke with stated
> that at a time when some broadcasting companies are laying off
> employees because of financial difficulties, FCC's regulatory
> fees may equal the cost of one or more employees that the
> company could not afford to keep because of the regulatory
> fees.  This potential impact on companies underscores the
> importance that FCC assess regulatory fees on a fair and
> equitable basis – and that it have updated information on FTEs
> with which to do so.

*Id*. at 21 (JA __).  Finally, the GAO found that the "FCC has not been

transparent in describing its regulatory fee process in its recent annual

NPRMs and Reports and Orders."  *Id*. at 23 (JA __).

In response to the FCC's request for comments on the *GAO Report*,

Sky once again urged the Commission to eliminate the disparity between

fees assessed for VHF and UHF channels.  *See* Reply Comments of Sarkes

Tarzian, Inc. and Sky Television, L.L.C. in MD Docket Nos. 12-201 and 08-

65 (filed Oct. 23, 2012) (JA __).  Subsequently, Sky's attorneys met with

12

Commission staff and advocated for the prompt elimination of the disparity. *See* Notice of Ex Parte Presentation in MD Docket Nos. 12-201 and 08-65 (filed Feb. 15, 2013) (JA __).

## SUMMARY OF ARGUMENT

In the *FY 2013 Order,* the Commission unreasonably, and arbitrarily and capriciously, delayed the effective date for the elimination of the irrational disparity in annual regulatory fees paid by VHF and UHF television stations.  The FCC's sole justification for the delay was that it had insufficient time to give Congress the required 90 days' notice prior to September 30, 2013.  But the FCC had previously announced that it would delay the effective date in the *FY 2013 NPRM.  See FY 2013 NPRM* at 7805 (¶ 36) (JA __).  The Commission did not explain in the *FY 2013 NPRM* why it had decided to delay the effective date.  When the FCC made that decision, it had more than sufficient time to give Congress 90 days' notice before September 30, 2013.  Moreover, the Commission regularly ignores the 90-day notice requirement with impunity.  Indeed, the Commission ignored the 90-day notice requirement with respect to other changes in regulatory fees in the *FY 2013 Order*.  In any event, nothing prevented the Commission from deferring the collection of FY 2013 fees from VHF

13

stations until after completion of the 90-day notice requirement, because the FCC was not required to collect these fees by September 30, 2013.

Since 2010, VHF stations have been required to pay higher regulatory fees than justified. Sky should not be required to pay yet another unreasonable and unjustifiable fee solely because of the Commission's unwarranted procrastination.

## STANDING

Sky has standing because it participated in the proceeding below and, as the holder of a VHF television station license, was adversely affected by the Commission's decision in the *FY 2013 Order* to delay the elimination of separate fee categories for VHF and UHF stations.

## ARGUMENT

## I.    THE COURT HAS JURISDICTION TO DECIDE THIS CASE.

This Court has jurisdiction to decide this case under the Administrative Procedure Act, 5 U.S.C. § 706.

The Commission may argue that Section 9(b) of the Communications Act, which provides that "[i]ncreases or decreases in fees" made by the Commission are not subject to judicial review, 47 U.S.C. § 159(b)(2)-(3), deprives the Court of jurisdiction to hear this case. But the statute is silent about whether decisions other than "increases or decreases" are reviewable, and the Court has previously found that it has jurisdiction to review such

14

decisions.  *See Comsat Corp. v. FCC*, 283 F.3d 344 (D.C. Cir. 2002)

("*Comsat II*"); *PanAmSat Corp. v. FCC*, 198 F.3d 890 (D.C. Cir. 1999)

("*PanAmSat*"); *Comsat Corp. v. FCC*, 114 F.3d 223 (D.C. Cir. 1997)

("*Comsat I*").

In this case, as in *Comsat I*, *PanAmSat*, and *Comsat II*, Sky does not

challenge an "increase or decrease in fees."  Rather, Sky challenges the

Commission's decision to delay implementation of its decision to cease

charging VHF stations a higher fee than UHF stations.  Therefore,

Section 9(b) does not deprive the Court of jurisdiction to consider this case

under the Administrative Procedure Act.

## II.    THE FCC'S DECISION TO DELAY WAS UNREASONABLE, ARBITRARY AND CAPRICIOUS.

The standard for review under the Administrative Procedure Act of

the Commission's decision to delay effectiveness of the elimination of the

VHF/UHF disparity is no different than the standard for review of other

agency decisions.  The decision to delay effectiveness is no less "agency

action" subject to judicial review than the decision to eliminate the

VHF/UHF disparity itself.  *Cf. FCC v. Fox Television Stations, Inc.*, 556

U.S. 502, 515 (2009) (the Administrative Procedure Act "makes no

distinction . . . between initial agency action and subsequent agency action

undoing or revising that action").  The issue here, therefore, is whether the

Commission's decision to delay the effective date was arbitrary or capricious – that is, whether it "runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29, 43 (1983).

Applying this standard to the Commission's decision to delay, it is evident from the *FY 2013 NPRM* that the Commission had predetermined that it would delay the effectiveness of the elimination of the VHF/UHF disparity months before it issued the *FY 2013 Order*.  In the *FY 2013 NPRM*, the Commission stated that the proposal, "if adopted, will be implemented in FY 2014." *FY 2013 NPRM* at 7805 (¶ 36) (JA __).  The Commission did not explain why it had decided to delay implementation, and it did not solicit comments on the decision.

The Commission offered an explanation only after Sky objected to the delay.  The Commission explained that it is required to give Congress 90 days' notice of the combination of the VHF/UHF fee categories before the change may become effective, and that it did "not have sufficient time to implement this change before September 30, 2013." *FY 2013 Order* at 12362 (¶ 31) (JA __).  There are thus two parts to the explanation:  (1) the

16

90-day notice requirement and (2) the apparent September 30, 2013 deadline.  Of course, neither would have been a hurdle had the FCC given Congress notice when it initiated the proceeding.  Yet at that point, the Commission had already decided to delay implementation, a decision that in itself was arbitrary and capricious.

Sky does not dispute that Section 9 requires the Commission to give Congress 90 days' notice of certain changes to the Schedule of Regulatory Fees, such as the decision to charge VHF and UHF stations the same amount.  Rather, Sky contends that the Commission applied the 90-day requirement inconsistently in the *FY 2013 Order*, has frequently ignored it in the past without any consequence, and could have complied with the 90-day notice requirement while still making the change effective for FY 2013.

Section 9 provides for two types of amendments or adjustments to the Commission's fee schedule:  "mandatory" and "permitted."  *See* 47 U.S.C. § 159(b)(2)-(3).  The Commission is required to give Congress notice "immediately" upon adoption of a mandatory adjustment.  47 U.S.C. § 159(b)(4)(A).  It is required to give Congress 90 days' notice before the effective date of any "permitted" amendment.  47 U.S.C. § 159(b)(4)(B).

The class of "mandatory" adjustments is very narrow.  Mandatory adjustments are "proportionate" increases or decreases to reflect changes in

the total amount that Congress has instructed the Commission to collect in annual appropriations legislation.  47 U.S.C. § 159(b)(2).[7]  In other words, a mandatory adjustment is – with one exception not applicable here – solely a proportionate adjustment to regulatory fees necessary to raise the funds that Congress has appropriated to the FCC for a particular fiscal year.  *See Assessment and Collection of Regulatory Fees for Fiscal Year 2004*, Report and Order, 19 FCC Rcd 11662, 11666 (¶ 9) (2004) (discussing the difference between mandatory and permitted amendments); *Assessment and Collection of Regulatory Fees for Fiscal Year 1997*, Report and Order, 12 FCC Rcd 17161, 17164 (¶ 5) (1997) (same).

In the *FY 2013 Order*, the FCC adopted three amendments to the Schedule of Regulatory Fees.  First, it combined the fee categories for VHF and UHF stations into one category.  *FY 2013 Order* at 12362 (¶ 30) (JA __).  Second, it created a new fee category for "internet protocol TV," which is digital television delivered through a high-speed internet connection.  *Id.* at 12363 (¶ 33) (JA __).  Third, and by far the most sweeping change, the FCC reallocated full time employees ("FTEs") working in the FCC's

---

[7] There is one exception to the proportionally requirement, which is not applicable to this case.  The Commission may make an apparently non-proportionate adjustment to reflect "unexpected increases or decreases in the number of licensees or units subject to payment of such fees."  47 U.S.C. § 159(b)(2)(A).

International Bureau, which had the effect of non-proportionately decreasing fees for some regulated entities and increasing fees for others. *Id.* at 12351, 12356 (¶¶ 2, 14) (JA __, __).

The FCC delayed implementation of the first two changes until FY 2014, stating that it needed to give Congress 90 days' notice. *FY 2013 Order* at 12362-63 (¶¶ 31, 33) (JA __, __). But it made the third change – the reallocation of International Bureau FTEs – effective immediately. *FY 2013 Order* at 12357-58 (¶ 19) (JA __). Indeed, the FCC even waived the 30-day notice period under 5 U.S.C. § 553(d). *Id.* at 12370 (¶ 56) (JA __).

Under Section 9, the reallocation of International Bureau FTEs was a "permitted amendment" that also required 90-day notice. The Commission described the reallocation of International Bureau FTEs as pursuant to the requirement of 47 U.S.C § 159(b)(1)(A). *Id.* at 12357 (¶ 18) (Section 9(b)(1)(A) "directs the Commission to establish regulatory fees based on the number of FTEs engaged in regulatory activities within the named bureaus") (JA __). An amendment to the Schedule "to comply with the requirements of [Section 9(b)(1)(A)]" is a "permitted" amendment under

19

Section 9(b)(3).  47 U.S.C. § 159(b)(3).[8]  But the Commission did not give Congress 90 days' notice of this change.  As mentioned above, the Commission made the change effectively immediately.  *FY 2013 Order* at 12370 (¶ 56) (JA __).

Nowhere in the *FY 2013 Order* did the Commission explain why it decided to honor the 90-day notice requirement for two changes, but ignore it for the third, which had a significantly greater impact on parties subject to regulatory fees.  The FCC's disparate treatment in the *FY 2013 Order* of "permitted" amendments to the Schedule of Regulatory Fees was arbitrary and capricious.

Moreover, the FCC has repeatedly ignored the 90-day notice requirement in the past, apparently without any ramification.  In the first five years following adoption of Section 9, the Commission consistently complied with the requirement.[9]  In those years, the Commission completed

---

[8]  *See also Assessment and Collection of Regulatory Fees for Fiscal Year 2004*, Report and Order, 19 FCC Rcd 11662, 11666 (¶ 9) (2004) ("Section 9(b)(3) also requires the Commission to amend, by rule, the Fee Schedule 'if the Commission determines that the schedule requires amendment to comply with the requirements' of Section 9(b)(1)(A).").

[9]  *See Assessment and Collection of Regulatory Fees for Fiscal Year 1995*, Report and Order, 10 FCC Rcd 13512, 13562 (¶ 145) (1995); *Assessment and Collection of Regulatory Fees for Fiscal Year 1996*, Report and Order, 11 FCC Rcd 18774, 18799 (¶ 76) (1996); *Assessment and Collection of Regulatory Fees for Fiscal Year 1997*, Report and Order, 12 FCC Rcd

its work in time to meet the 90 days' notice requirement.  For the next three years, the Commission only made mandatory adjustments, which do not require 90 days' notice.[10]

As the years passed, however, the Commission began to dawdle. When it failed to complete its work in time to give the required 90 days' notice of amendments that would be effective prior to the end of a fiscal year, the Commission simply ignored the 90 days' notice requirement.  For example, in 2003 the Commission revised the payment grid for AM and FM radio stations, which is a change in fee categories not unlike the decision to consolidate the VHF and UHF fee categories and, therefore, a permitted amendment.  The Commission made this change effective 30 days following publication in the Federal Register, not 90 days afterwards.  *Assessment and Collection of Regulatory Fees for Fiscal Year 2003*, Report and Order, 18 FCC Rcd 15985, 15987, 15996 (¶¶ 5, 35) (2003).  In the same year, the Commission also separated two radio services, MDS and LMDS, into distinct fee categories, which is also a permitted amendment, but did not

---

17161, 17195 (¶ 89) (1997); *Assessment and Collection of Regulatory Fees for Fiscal Year 1998*, Report and Order, 13 FCC Rcd 19820, 19843 (¶ 77) (1998); *Assessment and Collection of Regulatory Fees for Fiscal Year 1999*, Report and Order, 14 FCC Rcd 9868, 9889 (¶ 64) (1999).

[10] *See, e.g., Assessment and Collection of Regulatory Fees for Fiscal Year 2001*, Report and Order, 16 FCC Rcd 13525, 13529 (¶ 8) (2001).

give 90 days' notice of the change. *Id*. at 15989 (¶ 10). In 2010, when the

Commission first addressed the unfairness of the VHF/UHF disparity

following the conversion to digital, the Commission shifted "units" to the

UHF category, a non-proportionate change in fees which has the

characteristics of a permitted amendment without giving Congress 90 days'

notice. *Assessment and Collection of Regulatory Fees for Fiscal Year 2010*,

Report and Order, 25 FCC Rcd 9278, 9286 (¶ 20) (2010). Then, in 2011 the

Commission reduced fees for Interstate Telecommunications Service

Providers and increased fees for all other categories, which was a non-

proportionate change in fees and therefore a permitted amendment. Yet the

Commission did not give Congress 90 days' notice of this change.

*Assessment and Collection of Regulatory Fees for Fiscal Year 2011*, Report

and Order, 26 FCC Rcd 10812, 10817-18 (¶ 12) (2011).

  In sum, the Commission sometimes complies with the 90-day notice

requirement, and sometimes does not, while never explaining its decisions

and always without any apparent consequences. In other words, the FCC

arbitrarily and capriciously applies the notice requirement.

  The second part of the Commission's explanation for delay was that it

did not have "sufficient time to implement this change before September 30,

2013." *FY 2013 Order* at 12362 (¶ 31) (JA __). The Commission did not

explain why September 30, 2013 was a deadline. The FCC may argue that it was required to collect fees for FY 2013 by the last day of FY 2013, September 30, 2013. This argument would still not explain why the Commission chose to make some "permitted" amendments effective immediately and to delay the effectiveness of others.

Furthermore, the Commission was under no statutory obligation to collect FY 2013 fees during FY 2013. Instead, it could have deferred collection of FY 2013 fees from VHF stations until after completion of the 90-day notice requirement. Section 9 contains no requirement that the Commission collect regulatory fees for a particular fiscal year during that fiscal year. Similarly, the FCC appropriations legislation for FY 2013 did not require for the FCC to collect FY 2013 regulatory fees during FY 2013. In annual appropriations legislation, Congress only requires the Commission to apply funds collected in a fiscal year as an offset to the amount appropriated for that year. *See*, *e.g.*, Consolidated Appropriations Act, 2012, Pub. L. No. 112-74, 125 Stat. 786, 909 (2011) ("the sum herein appropriated shall be reduced as such offsetting collections are received during fiscal year 2012 so as to result in a final fiscal year 2012 appropriation estimated at $0"). Collections during a fiscal year may include fees relating to a prior fiscal year. *GAO Report* at 26 (the "FCC counts all regulatory fee payments

that arrive in a fiscal year as part of that year's regulatory fee collections, even if the imposed assessment was incurred in a prior year") (JA __).

The Commission has noted only that it is its "established practice . . . to collect these regulatory fees during a September . . . filing window in order to collect the required amount by the end of [its] fiscal year." *Assessment and Collection of Regulatory Fees for Fiscal Year 2012*, Report and Order, 27 FCC Rcd 8390, 8391 (¶ 1) (2012). A "practice" is different from a "requirement." In any event the FCC in fact collects fees from prior fiscal years as noted in the *GAO Report*. *See GAO Report* at 26 ("FCC counts all regulatory fee payments that arrive in a fiscal year as part of that year's regulatory fee collections, even if the imposed assessment was incurred in a prior year") (JA __). Indeed, Section 9 gives the Commission authority to "defer payment of a fee in any specific instance for good cause shown, where such action would promote the public interest." 47 U.S.C. § 159(d). The Commission could have used this authority to defer collection of FY 2013 fees from VHF stations until after the 90-day notice period had elapsed.

The Commission has previously made some amendments to the Schedule of Regulatory Fees effective later than others in order to accommodate the 90-day notice requirement. *See, e.g., Assessment and*

24

*Collection of Regulatory Fees for Fiscal Year 2007*, Report and Order and

Further Notice of Proposed Rulemaking, 22 FCC Rcd 15712, 15731 (¶ 63)

(2007) (amendments made effective 30 days after publication in the Federal

Register, "except that changes to the Schedule of Regulatory Fees made

pursuant to section 9(b)(3) of the Communications Act, and incorporating

regulatory fee payment obligations for interconnected VoIP service

providers, shall become effective 90 days after notification to Congress").  It

was arbitrary and capricious for the Commission not to do the same thing in

this case.

### III.    THE COMMISSION HAS UNREASONABLY DELAYED THE ELIMINATION OF THE DISTINCTION BETWEEN THE FEES CHARGED TO VHF AND UHF STATIONS.

The Commission long knew that the conversion to digital would

render VHF channels less valuable than UHF channels.  Yet, despite

repeated requests from Sky and knowing that the higher fee created

economic hardship for VHF stations that had also been adversely affected in

the conversion to digital, the FCC has delayed eliminating the disparity in

the annual regulatory fees charged to VHF and UHF stations.  The

Commission's delay has been unreasonable, and the Administrative

Procedure Act requires the Court to "compel agency action . . . unreasonably

delayed."  5 U.S.C. § 706(1).

25

Almost a decade ago, the Commission recognized that it needed to revise its Schedule of Regulatory Fees to take into account the conversion to digital. *See Assessment and Collection of Regulatory Fees for Fiscal Year 2005*, Report and Order and Order on Reconsideration, 20 FCC Rcd 12259, 12266-67 (¶ 23) (2005). Yet it did nothing. In 2008, it again recognized that rule changes were necessary. *See Assessment and Collection of Regulatory Fees for Fiscal Year 2008*, Report and Order and Further Notice of Proposed Rulemaking, 24 FCC Rcd 6388, 6405-06 (¶¶ 44-46) (2008). Again, it did nothing. In 2009, the FCC said that it would start collecting regulatory fees from digital television stations in FY 2010. *Assessment and Collection of Regulatory Fees for Fiscal Year 2009*, Notice of Proposed Rulemaking and Order, 24 FCC Rcd 5966, 5969-70 (¶¶ 9-11) (2009). Again, it made no changes to its rules. In 2010, after Sky had specifically raised the issue of the VHF/UHF disparity, the Commission "shift[ed]" dollars between UHF and VHF stations to reduce the disparity, characterizing the shift as a "move toward a combined fee category." *Assessment and Collection of Regulatory Fees for Fiscal Year 2010*, Report and Order, 25 FCC Rcd 9278, 9286 (¶ 20) (2010). The Commission stated that it was "imperative" to revise the regulatory fee structure for UHF and VHF broadcast television stations to take into account the impact of the

transition to digital broadcasting.  *Id.* at 9285 (¶ 19).  But it failed to follow

through, despite its inaccurate statement during the 2011 fee proceedings

that it "already acted on … the conversion of UHF and VHF Television

stations from analog to digital television."  *See Assessment and Collection of*

*Regulatory Fees for Fiscal Year 2011*, Notice of Proposed Rulemaking,

26 FCC Rcd 7068, 7076 (¶ 22) (2011); *see also Assessment and Collection*

*of Regulatory Fees for Fiscal Year 2011*, Report and Order, 26 FCC Rcd

10812, 10822 (¶ 28) (2011).

     In 2012, the Commission promised to initiate separate rulemaking

proceedings to address the "rapid transformation" that had occurred in the

communications industry and to implement changes resulting from these

rulemakings in FY 2013.  *Assessment and Collection of Regulatory Fees for*

*Fiscal Year 2012*, Notice of Proposed Rulemaking, 27 FCC Rcd 5539, 5540-

41 (¶¶ 3, 5) (2012); *see also Assessment and Collection of Regulatory Fees*

*for Fiscal Year 2012*, Report and Order, 27 FCC Rcd at 8391 n.5 ("We

expect to implement any changes that result from this rulemaking in

FY 2013").  It initiated one such proceeding, which was incorporated into

the *FY 2013 Order*, but did not make all of the changes effective for

FY 2013.

For reasons known only to the Commission, the FCC unreasonably delayed making adjustments to the Schedule of Regulatory Fees to account for the conversion of television stations to digital in 2009. Although the Commission has now, at last, made the necessary change to the Schedule, the Commission unnecessarily delayed the effective date by more than a year.

The Commission's delay is unreasonable. Exercising its authority under 5 U.S.C. § 706(1), the Court should compel the Commission to make the change to the Schedule of Regulatory Fees effective for FY 2013.

Most cases under 5 U.S.C. § 706(1) arise where a party harmed by a delay seeks a writ of mandamus compelling agency action. A writ of mandamus is unnecessary here because Sky has petitioned for review of the FCC's decision and the Court may, after review of the decision, compel the FCC to make the elimination of the VHF/UHF disparity effective for purposes of FY 2013 annual regulatory fees.

Although Sky is not seeking a writ of mandamus, the factors relevant in a mandamus action are helpful here. In *Telecomm. Research & Action Ctr. v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984), the Court outlined six factors relevant in determining whether an agency has taken too long to act:

> (1)    [T]he time agencies take to make decisions must be governed by a "rule of reason;"

28

(2)     where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

(3)     delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

(4)     the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

(5)     the court should also take into account the nature and extent of the interests prejudiced by delay; and

(6)     the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'"

*Id*. (citations omitted).

These factors, to the extent relevant, are satisfied here.  The television industry completed the conversion to digital in June 2009, at which time UHF channels became more valuable than VHF channels.  If the Commission's decision is allowed to stand, then for four years VHF stations will have been required to pay almost twice the amount of regulatory fees as UHF stations, notwithstanding that their channels were less valuable during this period.  Under a "rule of reason" test, four years is too long.  *See MCI Telecomm. Corp. v. FCC*, 627 F.2d 322, 325 (D.C. Cir. 1980) (FCC's four-year delay in determining a just and reasonable tariff was unreasonable).

29

Section 9 itself contemplates that the FCC will make annual revisions to the Schedule of Regulatory Fees, and the FCC has conducted annual rulemakings since 1995.  Given that Congress expected the FCC to revise the Schedule annually, and that the FCC in fact conducts an annual rulemaking on regulatory fees, it would have been reasonable for the Commission to have eliminated the VHF/UHF disparity when Sky first proposed it in 2010.

An order compelling the FCC to make the change effective for FY 2013 fees will not detract the Commission from its other chores.  It will not require any action or activities by the Commission other than notifying VHF stations of the amount due for FY 2013 and administering refunds as necessary.

If the change is not effective for FY 2013, then Sky and other similarly situated parties – who have paid excessive fees since FY 2010 – will be irrevocably prejudiced.  They will never recover past overpayments. *See In re Core Commc'ns Inc.*, 531 F.3d 849, 857-58 (D.C. Cir. 2008) (Core was "prejudiced by delay" because it was seeking relief not only for the future, but for the period since 2001).

When the Court in 1976 invalidated the Commission's fee schedule for the grant of applications for the assignment or transfer of control of

30

broadcast licenses, it also expressed concern over the FCC's decision to delay the effectiveness of an amendment to the fee schedule. *Capital Cities Commc'ns, Inc. v. FCC*, 554 F.2d 1135, 1139 (D.C. Cir. 1976). There, the Commission had adopted a schedule lowering fees on January 15, 1975, but had not made the change effective until March 1, 1975, a mere two and a half months later. While the Court noted that the Commission had the authority under the Administrative Procedure Act to delay the effective date of a newly adopted rule, this delay was not mandatory. *Id.* Because applicants receiving grants between the date of the adoption of the new fee schedule and its effective date would be prejudiced by being required to pay a higher fee, the Court instructed the Commission to reconsider on remand the problem of unequal treatment (assuming it did not become moot, which it did). *Id.* at 1138-39.

In this case, Sky has been prejudiced by the Commission's decision to delay elimination of the VHF/UHF disparity, notwithstanding the Commission's determination that the disparity is no longer justified. The Commission had the authority to make the change effective for FY 2013. The Commission's decision not to exercise this authority, but to delay by even another year, a change that it should have made for FY 2010, was

unreasonable, as well as arbitrary and capricious.  The appropriate remedy is for the Court to compel the FCC to make the change effective for FY 2013.

## CONCLUSION

Despite the knowledge that VHF channels would be less desirable than UHF channels after the television industry converted to digital in 2009, the Commission continued, without explanation, to charge VHF stations higher regulatory fees.  When after years of foot-dragging the Commission finally addressed the issue by deciding to charge VHF and UHF stations the same amount, it delayed the effectiveness of the decision for yet another year.

The Commission's stated justification for delaying the effective date of the elimination of the VHF/UHF disparity for a year does not hold water. The Commission claimed that it was required to give Congress 90 days' notice of the change, and that it did not have sufficient time to complete the notice process prior to September 30, 2013, a deadline that the FCC did not explain.  Yet, the FCC had predetermined to delay the effective date months earlier, when it still had sufficient time to give Congress 90 days' notice of the change.  Furthermore, the FCC applied the 90-day notice requirement arbitrarily and capriciously.  In the *FY 2013 Order*, the Commission made other changes that also required 90 days' notice, but it made them effective

32

immediately.  The Commission's decision to make some changes that required 90 days' notice effective immediately, but to delay others, without explanation of the reason for the disparate treatment, was clearly arbitrary and capricious.

Putting aside the Commission's arbitrary and capricious and apparently self-serving application of the 90-day notice requirement in the past, the Commission's explanation for delay was not plausible.  It was not required to collect the fees from VHF stations by September 30, 2013, the last day of FY 2013.  The Commission could have complied with the 90 days' notice requirement and collected fees from VHF stations any time after September 30.

Sky respectfully requests that the Court reverse and vacate the

Commission's decision in the *FY 2013 Order* to delay the effectiveness of

the consolidation of the VHF and UHF fee categories, and compel the

Commission to make the change, which has been unreasonably delayed,

effective for FY 2013.

Respectfully submitted,

/s/ Meredith S. Senter Jr.
Meredith S. Senter, Jr.
S. Jenell Trigg
F. Scott Pippin
LERMAN SENTER PLLC
2000 K Street, NW, Suite 600
Washington, DC  20006
(202) 429-8970

February 28, 2014                    *Attorneys for Petitioner*

34

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a)(7)(C) of the Federal Rules of Appellate

Procedure, I certify the following:

This brief complies with the type-volume limitation of

Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure and D.C.

Circuit Rule 32(a)(3)(B) because this brief contains 7,460 words, excluding

the parts of the brief exempted by Rule 32(a)(7)(B)(iii) of the Federal Rules

of Appellate Procedure and Circuit Rule 32(a)(2).

This brief complies with the typeface requirements of Rule 32(a)(5) of

the Federal Rules of Appellate Procedure because this brief has been

prepared in a proportionately spaced typeface using the 2010 version of

Microsoft Word in 14 point Times New Roman.


/s/ Meredith S. Senter Jr.
*Counsel to Petitioner*
*Sky Television, L.L.C.*


Dated: February 28, 2013

## CERTIFICATE OF SERVICE

I certify that on February 28, 2014, I caused the foregoing document to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the D.C. Circuit using the CM/ECF system. I further certify that six copies of the foregoing will be filed with the Clerk of the Court for the United States Court of Appeals for the D.C. Circuit within two business days. All participants are registered CM/ECF users and will be served by the CM/ECF system.

Jacob M. Lewis
Richard K. Welch
Pamela L. Smith
Federal Communications Commission
Office of the General Counsel
445 12th Street, S.W.
Washington, DC  20554

*Counsel of the Federal Communications Commission*

Adam D. Chandler
Robert B. Nicholson
U.S. Department of Justice
Antitrust Division, Appellate Section
950 Pennsylvania Ave., N.W.
Room 3224
Washington, DC  20530

*Counsel for the United States of America*

/s/ Meredith S. Senter Jr.

**ADDENDUM**

**STATUTES, RULES & REGULATIONS**

# TABLE OF CONTENTS

**Page**

Communications Act of 1934
    47 U.S.C. § 159 ................................................................................. 1
    47 U.S.C. § 402 ................................................................................. 5
FCC Rules & Regulations
    47 C.F.R. § 1.1152 ............................................................................. 6
    47 C.F.R. § 1.1153 ............................................................................ 10
    47 C.F.R. § 1.1154 ............................................................................ 13
    47 C.F.R. § 1.1155 ............................................................................ 14
    47 C.F.R. § 1.1156 ............................................................................ 15

## Communications Act of 1934, 47 U.S.C. § 159

**§ 159 Regulatory Fees**

    (a)    General authority.

        (1)    Recovery of costs. The Commission, in accordance with this section, shall assess and collect regulatory fees to recover the costs of the following regulatory activities of the Commission: enforcement activities, policy and rulemaking activities, user information services, and international activities.

    (b)    Establishment and adjustment of regulatory fees

        (2)    Mandatory adjustment of schedule. For any fiscal year after fiscal year 1994, the Commission shall, by rule, revise the Schedule of Regulatory Fees by proportionate increases or decreases to reflect, in accordance with paragraph (1)(B), changes in the amount appropriated for the performance of the activities described in subsection (a) for such fiscal year. Such proportionate increases or decreases shall—

        (A)    be adjusted to reflect, within the overall amounts described in appropriations Acts under the authority of paragraph (1)(A), unexpected increases or decreases in the number of licensees or units subject to payment of such fees; and

        (B)    be established at amounts that will result in collection of an aggregate amount of fees pursuant to this section that can reasonably be expected to equal the aggregate amount of fees that are required to be collected by appropriations Acts pursuant to paragraph (1)(B).

        Increases or decreases in fees made by adjustments pursuant to this paragraph shall not be subject to judicial review. In making adjustments pursuant to this paragraph the Commission may round such fees to the nearest $5 in the case of fees under $1,000, or to the nearest $25 in the case of fees of $1,000 or more.

        (3)    Permitted amendments.  In addition to the adjustments required by paragraph (2), the Commission shall, by regulation, amend the Schedule of Regulatory Fees if the Commission determines that the

Schedule requires amendment to comply with the requirements of paragraph (1)(A). In making such amendments, the Commission shall add, delete, or reclassify services in the Schedule to reflect additions, deletions, or changes in the nature of its services as a consequence of Commission rulemaking proceedings or changes in law. Increases or decreases in fees made by amendments pursuant to this paragraph shall not be subject to judicial review.

(4) Notice to Congress. The Commission shall—

(A)   transmit to the Congress notification of any adjustment made pursuant to paragraph (2) immediately upon the adoption of such adjustment; and

(B)   transmit to the Congress notification of any amendment made pursuant to paragraph (3) not later than 90 days before the effective date of such amendment.

(d)   Waiver, reduction, and deferment. The Commission may waive, reduce, or defer payment of a fee in any specific instance for good cause shown, where such action would promote the public interest.

(g)   Schedule of regulatory fees. Until amended by the Commission pursuant to subsection (b), the Schedule of Regulatory Fees which the Federal Communications Commission shall, subject to subsection (a)(2), assess and collect shall be as follows:

## Schedule of Regulatory Fees

-------------------------------------------------------------------------------------------

| Bureau/Category | Annual Regulatory Fee |
|---|---|
| Private Radio Bureau | |
| Exclusive use services (per license) | |
| Land Mobile (above 470 MHz, Base Station and SMRS) (47 C.F.R. Part 90) | $ 16 |
| Microwave (47 C.F.R. Part 94) | 16 |
| Interactive Video Data Service (47 C.F.R. Part 95) | 16 |
| Shared use services (per license unless otherwise noted) | 7 |
| Amateur vanity call-signs | 7 |
| Mass Media Bureau (per license) | |

AM radio (47 C.F.R. Part 73)
  Class D Daytime ................................................................ 250
  Class A Fulltime ................................................................ 900
  Class B Fulltime ................................................................ 500
  Class C Fulltime ................................................................ 200
  Construction permits ......................................................... 100
FM radio (47 C.F.R. Part 73)
  Classes C, C1, C2, B ......................................................... 900
  Classes A, B1, C3 .............................................................. 600
  Construction permits ......................................................... 500
TV (47 C.F.R. Part 73)
  VHF Commercial
    Markets 1 thru 10 ....................................................... 18,000
    Markets 11 thru 25 ..................................................... 16,000
    Markets 26 thru 50 ..................................................... 12,000
    Markets 51 thru 100 ..................................................... 8,000
    Remaining Markets ...................................................... 5,000
    Construction permits .................................................... 4,000
  UHF Commercial
    Markets 1 thru 10 ....................................................... 14,400
    Markets 11 thru 25 ..................................................... 12,800
    Markets 26 thru 50 ....................................................... 9,600
    Markets 51 thru 100 ..................................................... 6,400
    Remaining Markets ...................................................... 4,000
    Construction permits .................................................... 3,200
Low Power TV, TV Translator, and TV Booster (47 C.F.R.
 Part 74 ............................................................................. 135
Broadcast Auxiliary (47 C.F.R. Part 74) ................................... 25
International (HF) Broadcast (47 C.F.R. Part 73) ..................... 200
Cable Antenna Relay Service (47 C.F.R. Part 78) ................... 220
Cable Television System (per 1,000 subscribers) (47
 C.F.R. Part 76) ................................................................ 370
Common Carrier Bureau
 Radio Facilities
  Cellular Radio (per 1,000 subscribers) (47 C.F.R.
  Part 22) ........................................................................... 60
  Personal Communications (per 1,000 subscribers)
  (47 C.F.R.) ....................................................................... 60
  Space Station (per operational station in geosynchronous
  orbit) (47 C.F.R. Part 25) ............................................ 65,000

Space Station (per system in low-earth orbit)
(47 C.F.R. Part 25) ................................................................ 90,000
Public Mobile (per 1,000 subscribers) (47 C.F.R. Part 22) ...................... 60
Domestic Public Fixed (per call sign) (47 C.F.R. Part 21) ....................... 55
International Public Fixed (per call sign) (47 C.F.R.
Part 23) ............................................................................. 110
Earth Stations (47 C.F.R. Part 25)
VSAT and equivalent C-Band antennas (per 100 antennas) ...................... 6
Mobile satellite earth stations (per 100 antennas) ....................................... 6
Earth station antennas
Less than 9 meters (per 100 antennas) ................................................... 6
9 Meters or more
Transmit/Receive and Transmit Only (per meter) ............................... 85
Receive only (per meter) ....................................................................... 55
Carriers
Inter-Exchange Carrier (per 1,000 presubscribed access
lines) ................................................................................................. 60
Local Exchange Carrier (per 1,000 access lines) ..................................... 60
Competitive access provider (per 1,000 subscribers) .............................. 60
International circuits (per 100 active 64KB circuit or
equivalent) ........................................................................................ 220

4

## Communications Act of 1934, 47 U.S.C. § 402

**§ 402 Judicial review of Commission's orders and decisions**

 (a) Procedure.  Any proceeding to enjoin, set aside, annul or suspend any order of the Commission under this Act (except those appealable under subsection (b) of this section) shall be brought as provided by and in the manner prescribed in chapter 158 of title 28.

### FCC Rules & Regulations, 47 C.F.R. § 1.1152

**§ 1.1152 Schedule of annual regulatory fees and filing locations for wireless radio services.**

| Exclusive use services (per license) | Fee amount[1] | Address |
|---|---|---|
| 1. Land Mobile (Above 470 MHz and 220 MHz Local, Base Station & SMRS) (47 CFR part 90) | | |
| (a) New, Renew/Mod (FCC 601 & 159) | $40.00 | FCC, P.O. Box 979097, St. Louis, MO 63197-9000. |
| (b) New, Renew/Mod (Electronic Filing) (FCC 601 & 159) | 40.00 | FCC, P.O. Box 979097, St. Louis, MO 63197-9000. |
| (c) Renewal Only (FCC 601 & 159) | 40.00 | FCC, P.O. Box 979097, St. Louis, MO 63197-9000. |
| (d) Renewal Only (Electronic Filing) (FCC 601 & 159) | 40.00 | FCC, P.O. Box 979097, St. Louis, MO 63197-9000. |
| 220 MHz Nationwide (a) New, Renew/Mod (FCC 601 & 159) | 40.00 | FCC, P.O. Box 979097, St. Louis, MO 63197-9000. |
| (b) New, Renew/Mod (Electronic Filing) (FCC 601 & 159) | 40.00 | FCC, P.O. Box 979097, St. Louis, MO 63197-9000. |
| (c) Renewal Only (FCC 601 & 159) | 40.00 | FCC, P.O. Box 979097, St. Louis, MO 63197-9000. |
| (d) Renewal Only (Electronic Filing) (FCC 601 & 159) | 40.00 | FCC, P.O. Box 979097, St. Louis, MO 63197-9000. |
| 2. Microwave (47 CFR Pt. 101) (Private) | | |
| (a) New, Renew/Mod (FCC 601 & 159) | 20.00 | FCC, P.O. Box 979097, St. Louis, MO 63197-9000. |
| (b) New, Renew/Mod (Electronic Filing) (FCC 601 & 159) | 20.00 | FCC, P.O. Box 979097, St. Louis, MO 63197-9000. |
| (c) Renewal Only (FCC 601 & 159) | 20.00 | FCC, P.O. Box 979097, St. Louis, MO 63197-9000. |

---

[1] Note that "small fees" are collected in advance for the entire license term. Therefore, the annual fee amount shown in this table that is a small fee (categories 1 through 5) must be multiplied by the 5- or 10-year license term, as appropriate, to arrive at the total amount of regulatory fees owed. It should be further noted that application fees may also apply as detailed in § 1.1102 of this chapter.

| Exclusive use services (per license) | Fee amount[1] | Address |
|---|---|---|
| (d) Renewal Only (Electronic Filing) (FCC 601 & 159) | 20.00 | FCC, P.O. Box 979097, St. Louis, MO 63197-9000. |
| 3. 218-219 MHz Service | | |
| (a) New, Renew/Mod (FCC 601 & 159) | 75.00 | FCC, P.O. Box 979097, St. Louis, MO 63197-9000. |
| (b) New, Renew/Mod (Electronic Filing) (FCC 601 & 159) | 75.00 | FCC, P.O. Box 979097, St. Louis, MO 63197-9000. |
| (c) Renewal Only (FCC 601 & 159) | 75.00 | FCC, P.O. Box 979097, St. Louis, MO 63197-9000. |
| (d) Renewal Only (Electronic Filing) (FCC 601 & 159) | 75.00 | FCC, P.O. Box 979097, St. Louis, MO 63197-9000. |
| 4. Shared Use Services | | |
| Land Mobile (Frequencies Below 470 MHz--except 220 MHz) | | |
| (a) New, Renew/Mod (FCC 601 & 159) | 15.00 | FCC, P.O. Box 979097, St. Louis, MO 63197-9000. |
| (b) New, Renew/Mod (Electronic Filing) (FCC 601 & 159) | 15.00 | FCC, P.O. Box 979097, St. Louis, MO 63197-9000. |
| (c) Renewal Only (FCC 601 & 159) | 15.00 | FCC, P.O. Box 979097, St. Louis, MO 63197-9000. |
| (d) Renewal Only (Electronic Filing) (FCC 601 & 159) | 15.00 | FCC, P.O. Box 979097, St. Louis, MO 63197-9000. |
| General Mobile Radio Service | | |
| (a) New, Renew/Mod (FCC 605 & 159) | 5.00 | FCC, P.O. Box 979097, St. Louis, MO 63197-9000. |
| (b) New, Renew/Mod (Electronic Filing) (FCC 605 & 159) | 5.00 | FCC, P.O. Box 979097, St. Louis, MO 63197-9000. |
| (c) Renewal Only (FCC 605 & 159) | 5.00 | FCC, P.O. Box 979097, St. Louis, MO 63197-9000. |
| (d) Renewal Only (Electronic Filing) (FCC 605 & 159) | 5.00 | FCC, P.O. Box 979097, St. Louis, MO 63197-9000. |
| Rural Radio (Part 22) | | |
| (a) New, Additional Facility, Major Renew/Mod (Electronic Filing) (FCC 601 & 159) | 15.00 | FCC, P.O. Box 979097, St. Louis, MO, 63197-9000 |
| (b) Renewal, Minor Renew/Mod (Electronic Filing) (FCC 601 & 159) | 15.00 | FCC, P.O. Box 979097, St. Louis, MO 63197-9000. |

| Exclusive use services (per license) | Fee amount[1] | Address |
|---|---|---|
| Marine Coast | | |
| (a) New Renewal/Mod (FCC 601 & 159) | 55.00 | FCC, P.O. Box 979097, St. Louis, MO 63197-9000. |
| (b) New, Renewal/Mod (Electronic Filing) (FCC 601 & 159) | 55.00 | FCC, P.O. Box 979097, St. Louis, MO 63197-9000. |
| (c) Renewal Only (FCC 601 & 159) | 55.00 | FCC, P.O. Box 979097, St. Louis, MO 63197-9000. |
| (d) Renewal Only (Electronic Filing) (FCC 601 & 159) | 55.00 | FCC, P.O. Box 979097, St. Louis, MO 63197-9000 |
| Aviation Ground | | |
| (a) New, Renewal/Mod (FCC 601 & 159) | 15.00 | FCC, P.O. Box 979097, St. Louis, MO 63197-9000. |
| (b) New, Renewal/Mod (Electronic Filing) (FCC 601 & 159) | 15.00 | FCC, P.O. Box 979097, St. Louis, MO 63197-9000. |
| (c) Renewal Only (FCC 601 & 159) | 15.00 | FCC, P.O. Box 979097, St. Louis, MO 63197-9000. |
| (d) Renewal Only (Electronic Only) (FCC 601 & 159) | 15.00 | FCC, P.O. Box 979097, St. Louis, MO 63197-9000. |
| Marine Ship | | |
| (a) New, Renewal/Mod (FCC 605 & 159) | 10.00 | FCC, P.O. Box 979097, St. Louis, MO 63197-9000. |
| (b) New, Renewal/Mod (Electronic Filing) (FCC 605 & 159) | 10.00 | FCC, P.O. Box 979097, St. Louis, MO 63197-9000. |
| (c) Renewal Only (FCC 605 & 159) | 10.00 | FCC, P.O. Box 979097, St. Louis, MO 63197-9000. |
| (d) Renewal Only (Electronic Filing) (FCC 605 & 159) | 10.00 | FCC, P.O. Box 979097, St. Louis, MO 63197-9000 |
| Aviation Aircraft | | |
| (a) New, Renew/Mod (FCC 605 & 159) | 10.00 | FCC, P.O. Box 979097, St. Louis, MO 63197-9000. |
| (b) New, Renew/Mod (Electronic Filing) (FCC 605 & 159) | 10.00 | FCC, P.O. Box 979097, St. Louis, MO 63197-9000. |
| (c) Renewal Only (FCC 605 & 159) | 10.00 | FCC, P.O. Box 979097, St. Louis, MO 63197-9000. |
| (d) Renewal Only (Electronic Filing) (FCC 605 & 159) | 10.00 | FCC, P.O. Box 979097, St. Louis, MO 63197-9000. |
| 5. Amateur Vanity Call Signs | | |
| (a) Initial or Renew (FCC 605 & | 1.61 | FCC, P.O. Box 979097, St. Louis, |

| Exclusive use services (per license) | Fee amount[1] | Address |
|---|---|---|
| 159) | | MO 63197-9000. |
| (b) Initial or Renew (Electronic Filing) (FCC 605 & 159) | 1.61 | FCC, P.O. Box 979097, St. Louis, MO 63197-9000. |
| 6. CMRS Cellular/Mobile Services (per unit) (FCC 159) | .18 fn2 | FCC, P.O. Box 979084, St. Louis, MO 63197-9000. |
| 7. CMRS Messaging Services (per unit) (FCC 159) | .08 fn3 | FCC, P.O. Box 979084, St. Louis, MO 63197-9000. |
| 8. Broadband Radio Service (formerly MMDS and MDS) | 510 | FCC, P.O. Box 979084, St. Louis, MO 63197-9000. |
| 9. Local Multipoint Distribution Service | 510 | FCC, P.O. Box 979084, St. Louis, MO 63197-9000. |

## FCC Rules & Regulations, 47 C.F.R. § 1.1153

**§ 1.1153 Schedule of annual regulatory fees and filing locations for mass media services.**

| Radio [AM and FM] (47 C.F.R. part 73) | Fee amount | Address |
|---|---|---|
| 1. AM Class A | | |
| <=25,000 population | $775 | FCC, Radio, P.O. Box 979084, St. Louis, MO 63197-9000. |
| 25,001-75,000 population | 1,550 | |
| 75,001-150,000 population | 2,325 | |
| 150,001-500,000 population | 3,475 | |
| 500,001-1,200,000 population | 5,025 | |
| 1,200,001-3,000,000 population | 7,750 | |
| >3,000,000 population | 9,300 | |
| 2. AM Class B | | |
| <=25,000 population | 645 | FCC, Radio, P.O. Box 979084, St. Louis, MO 63197-9000. |
| 25,001-75,000 population | 1,300 | |
| 75,001-150,000 population | 1,625 | |
| 150,001-500,000 population | 2,750 | |
| 500,001-1,200,000 population | 4,225 | |
| 1,200,001-3,000,000 population | 6,500 | |
| >3,000,000 population | 7,800 | |
| 3. AM Class C | | |
| <=25,000 population | 590 | FCC, Radio, P.O. Box 979084, St. Louis, MO 63197-9000. |
| 25,001-75,000 population | 900 | |
| 75,001-150,000 population | 1,200 | |
| 150,001-500,000 population | 1,800 | |
| 500,001-1,200,000 population | 3,000 | |
| 1,200,001-3,000,000 population | 4,500 | |
| >3,000,000 population | 5,700 | |
| 4. AM Class D | | |
| <=25,000 population | 670 | FCC, Radio, P.O. Box 979084, St. Louis, MO 63197-9000. |
| 25,001-75,000 population | 1,000 | |
| 75,001-150,000 population | 1,675 | |
| 150,001-500,000 population | 2,025 | |

10

| Radio [AM and FM] (47 C.F.R. part 73) | Fee amount | Address |
|---|---|---|
| 500,001-1,200,000 population | 3,375 | |
| 1,200,001-3,000,000 population | 5,400 | |
| >3,000,000 population | 6,750 | |
| 5. AM Construction Permit | 590 | FCC, Radio, P.O. Box 979084, St. Louis, MO 63197-9000. |
| 6. FM Classes A, B1 and C3 | | |
| <=25,000 population | 750 | FCC, Radio, P.O. Box 979084, St. Louis, MO 63197-9000. |
| 25,001-75,000 population | 1,500 | |
| 75,001-150,000 population | 2,050 | |
| 150,001-500,000 population | 3,175 | |
| 500,001-1,200,000 population | 5,050 | |
| 1,200,001-3,000,000 population | 8,250 | |
| >3,000,000 population | 10,500 | |
| 7. FM Classes B, C, C0, C1 and C2 | | |
| <=25,000 population | 925 | FCC, Radio, P.O. Box 979084, St. Louis, MO 63197-9000. |
| 25,001-75,000 population | 1,625 | |
| 75,001-150,000 population | 3,000 | |
| 150,001-500,000 population | 3,925 | |
| 500,001-1,200,000 population | 5,775 | |
| 1,200,001-3,000,000 population | 9,250 | |
| >3,000,000 population | 12,025 | |
| 8. FM Construction Permits | 750 | FCC, Radio, P.O. Box 979084, St. Louis, MO, 3197-9000. |
| TV (47 CFR, part 73) VHF Commercial | | |
| 1. Markets 1 thru 10 | 86,075 | FCC, TV Branch, P.O. Box 979084, St. Louis, MO 63197-9000. |
| 2. Markets 11 thru 25 | 78,975 | |
| 3. Markets 26 thru 50 | 42,775 | |
| 4. Markets 51 thru 100 | 22,475 | |
| 5. Remaining Markets | 6,250 | |
| 6. Construction Permits | 6,250 | |
| UHF Commercial | | |
| 1. Markets 1 thru 10 | 38,000 | FCC,UHF Commercial, P.O. Box 979084, St. Louis, MO 63197-9000. |
| 2. Markets 11 thru 25 | 35,050 | |

| Radio [AM and FM] (47 C.F.R. part 73) | Fee amount | Address |
|---|---|---|
| 3. Markets 26 thru 50 | 23,550 | |
| 4. Markets 51 thru 100 | 13,700 | |
| 5. Remaining Markets | 3,675 | |
| 6. Construction Permits | 3,675 | |
| Satellite UHF/VHF Commercial | | |
| 1. All Markets | 1,525 | FCC Satellite TV, P.O. Box 979084, St. Louis, MO 63197-9000. |
| 2. Construction Permits | 960 | |
| Low Power TV, Class A TV, TV/FM Translator, & TV/FM Booster (47 CFR part 74) | 410 | FCC, Low Power, P.O. Box 979084, St. Louis, MO 63197-9000. |
| Broadcast Auxiliary | 10 | FCC, Auxiliary, P.O. Box 979084, St. Louis, MO 63197-9000. |

## FCC Rules & Regulations, 47 C.F.R. § 1.1154

**§ 1.1154 Schedule of annual regulatory charges and filing locations for common carrier services.**

| Radio facilities | Fee amount | Address |
|---|---|---|
| 1. Microwave (Domestic Public Fixed) (Electronic Filing) (FCC Form 601 & 159) | $20.00 | FCC, P.O. Box 979097, St. Louis, MO 63197-9000. |
| Carriers | | |
| 1. Interstate Telephone Service Providers (per interstate and international end-user revenues (see FCC Form 499-A) | .00347 | FCC, Carriers P.O. Box 979084, St. Louis, MO 63197-9000. |

## FCC Rules & Regulations, 47 C.F.R. § 1.1155

**§ 1.1155 Schedule of regulatory fees and filing locations for cable television services.**

|  | Fee amount | Address |
|---|---|---|
| 1. Cable Television Relay Service | $510 | FCC, Cable, P.O. Box 979084, St. Louis, MO 63197-9000. |
| 2. Cable TV System (per Subscriber) | 1.02 |  |

14

## FCC Rules & Regulations, 47 C.F.R. § 1.1156

**§ 1.1156 Schedule of regulatory fees and filing locations for international services.**

(a)     The following schedule applies for the listed services:

| Fee category | Fee amount | Address |
|---|---|---|
| Space Stations (Geostationary Orbit) | $139,100 | FCC, International, P.O. Box 979084, St. Louis, MO 63197-9000. |
| Space Stations (Non-Geostationary Orbit) | 149,875 | FCC, International, P.O. Box 979084, St. Louis, MO 63197-9000. |
| Earth Stations: Transmit/Receive & Transmit only (per Authorization or registration) | 275 | FCC, International, P.O. Box 979084, St. Louis, MO 63197-9000. |

(b)

(1)     International Terrestrial and Satellite. Regulatory fees for International Bearer Circuits are to be paid by facilities-based common carriers that have active (used or leased) international bearer circuits as of December 31 of the prior year in any terrestrial or satellite transmission facility for the provision of service to an end user or resale carrier, which includes active circuits to themselves or to their affiliates. In addition, non-common carrier satellite operators must pay a fee for each circuit sold or leased to any customer, including themselves or their affiliates, other than an international common carrier authorized by the Commission to provide U.S. international common carrier services. "Active circuits" for these purposes include backup and redundant circuits. In addition, whether circuits are used specifically for voice or data is not relevant in determining that they are active circuits.

(2)     The fee amount, per active 64 KB circuit or equivalent will be determined for each fiscal year. Payment, if mailed, shall be sent to: FCC, International, P.O. Box 979084, St. Louis, MO 63197-9000.

15

| International terrestrial and satellite (capacity as of December 31, 2012) | Fee amount | Address |
|---|---|---|
| Terrestrial Common Carrier<br>Satellite Common Carrier<br>Satellite Non-Common Carrier | $0.27 per 64 KB Circuit | FCC, International, P.O. Box 979084, St. Louis, MO 63197-9000. |

    (c)    Submarine cable. Regulatory fees for submarine cable systems will be paid annually, per cable landing license, for all submarine cable systems operating as of December 31 of the prior year. The fee amount will be determined by the Commission for each fiscal year. Payment, if mailed, shall be sent to: FCC, International, P.O. Box 979084, St. Louis, MO 63197-9000.

| Submarine cable systems (capacity as of Dec. 31, 2012) | Fee amount | Address |
|---|---|---|
| < 2.5 Gbps | $13,600 | FCC, International, P.O. Box 979084, St. Louis, MO 63197-9000. |
| 2.5 Gbps or greater, but less than 5 Gbps | 27,200 | FCC, International, P.O. Box 979084, St. Louis, MO 63197-9000. |
| 5 Gbps or greater, but less than 10 Gbps | 54,435 | FCC, International, P.O. Box 979084, St. Louis, MO 63197-9000. |
| 10 Gbps or greater, but less than 20 Gbps | 108,850 | FCC, International, P.O. Box 979084, St. Louis, MO 63197-9000. |
| 20 Gbps or greater | 217, 675 | FCC, International, P.O. Box 979084, St. Louis, MO 63197-9000. |

16